## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

JENNY D. BICKLEY,

                Plaintiff,

v.                                      ACTION NO. 2:16cv131

EVE GREGORY,
*Individually and
trading as*
AMC COLLECTIONS
and DEBT RECOVERY, and

CHARLES GREGORY,

                Defendants.

## UNITED STATES MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

This matter is before the Court on plaintiff Jenny D. Bickley's motion for default judgment as to defendant Eve Gregory, individually and trading as AMC Collections and Debt Recovery, and defendant Charles Gregory. ECF No. 8. This matter was referred to the undersigned United States Magistrate Judge pursuant to a Referral Order from the Chief United States District Judge. ECF No. 13; *see also* 28 U.S.C. § 636(b)(1)(B) and (C); Fed. R. Civ. P. 72(b); E.D. Va. Local Civ. R. 72. For the reasons discussed below, the undersigned recommends that the Court **GRANT** plaintiff's motion for default judgment, ECF No. 8.

### I. PROCEDURAL HISTORY

On March 21, 2016, plaintiff Jenny D. Bickley filed a complaint against Eve Gregory ("Eve") and Charles Gregory ("Charles"), seeking relief for violations of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. ECF No. 1. At the time of the

conduct alleged, Eve was the owner and sole proprietor of AMC Collections and Debt Recovery ("AMC"), a debt collection business located in Suffolk, Virginia. Compl. ¶ 3. Charles was an employee of AMC. Compl. ¶ 5. The defendants were served with process on April 1, 2016. *See* ECF No. 3. The defendants attempted to file answers to the complaint on April 22, 2016. ECF Nos. 4–5. Each answer, however, lacked a certificate of service and the Court, accordingly, struck the answers on April 27, 2016. ECF Nos. 6–7. The Court granted the defendants leave to file corrected answers within 30 days. *Id.* The defendants did not file corrected answers. On June 10, 2016, plaintiff requested, and the Clerk entered, default against the defendants. ECF Nos. 9–10. Also on June 10, 2016, plaintiff moved for entry of a default judgment. ECF No. 8. The defendants did not respond to the motion, and the time do so has expired.

An evidentiary hearing was held on August 25, 2016, at which the plaintiff appeared with counsel. ECF No. 15. The plaintiff testified and submitted additional evidence to substantiate her claims and damages. *Id.* The defendants did not appear.[1] *Id.*

Plaintiff's complaint alleges seven separate violations of the FDCPA. The plaintiff voluntarily dismissed count V at the evidentiary hearing. Pursuant to 15 U.S.C. § 1629k, the plaintiff seeks: $15,000.00 in actual damages for emotional distress; $1,500.00 in actual damages for out-of-pocket expenses for the defense of a related lawsuit; $1,000.00 in statutory damages; $12,281.25 in attorney's fees; $424.00 in costs; and pre- and post-judgment interest.

## II. FACTUAL BACKGROUND

This case concerns the defendants' attempts, in 2015 and 2016, to collect a debt from Ms. Bickley that she allegedly owed as a result of medical services she received in 2010 and 2011. Compl. ¶¶ 7–20. The debts were not legally collectable during the time that defendants were

---

[1] Notice of the hearing was sent by mail to the defendants at their address in Suffolk, Virginia. ECF No. 14.

attempting to collect. Compl. ¶¶ 7, 29.

According to the complaint, Ms. Bickley received medical services from a provider, Specialists for Women, in May 2010 and August 2011. Compl. ¶ 7. Ms. Bickley believed that her medical insurance company, Harvard Pilgrim, processed the claims for payment for those services. *Id.* In October 2013 and December 2013, however, Specialists for Women billed her for the services. Compl. ¶ 8; Specialists for Women Statements, ECF Nos. 15-2, 15-3. At that time, Eve was working as office manager at Specialists for Women, and Ms. Bickley and Eve spoke over the phone about the bills. Compl. ¶¶ 3, 8.

Over a year and a half later, on May 6, 2015, defendant Eve filed a Certificate of Assumed or Fictitious Name with the Circuit Court Clerk's Office in Suffolk, Virginia, in order to conduct business under the fictitious name of "AMC Collections and Debt Recovery." Compl. ¶ 9. The certificate listed Eve as owner of the sole proprietorship. *Id.* The following day, Ms. Bickley received a telephone call from defendant Charles, an employee of AMC. Compl. ¶ 10. Charles demanded payment "for unspecified medical bills and collection fees totaling $5,800.00." Compl. ¶ 10.

On January 14, 2016, over eight months after the May 2015 call, Charles again called Ms. Bickley to demand payment. Compl. ¶ 13. During this call, Ms. Bickley told Charles "that the debt had not been timely filed with the insurance company and that [she] was not responsible for payment." Compl. ¶ 14. Charles told Ms. Bickley that he would confer with Eve regarding the account. *Id.* Ms. Bickley then called Charles on January 20, 2016 "to determine if AMC had resolved the question of insurance submittal of the bills." Compl. ¶ 15. Charles told Ms. Bickley that he was trying to avoid taking the matter to court and that he would continue to communicate with Eve about the account. Compl. ¶ 16.

On January 28, 2016, AMC Collections and Debt Recovery filed suit against Ms. Bickley in General District Court for the City of Suffolk, Virginia. Compl. ¶ 17, 29.  Ms. Bickley was served on January 29, 2016, when she received a copy of the Warrant in Debt by mail. Compl. ¶ 17.  The return address listed on the envelope was:  AMC Collections and Debt Recovery, PO Box 4288, Suffolk, VA 23439. *Id.*  The envelope was received in evidence at the hearing on August 25, 2016. Ex. 7.  Upon receipt of the Warrant in Debt on January 29, 2016, Ms. Bickley called Charles to find out why AMC had sued her. Compl. ¶ 18.  Charles told Ms. Bickley that Eve had instructed him to turn the account over to "Corporate." *Id.*  Charles further stated that he was the owner of "Corporate" and that his lawyer instructed him to file the case. *Id.*  Charles did not provide additional information about his attorney. *Id.*  In March 2016, Charles appeared in General District Court on behalf of AMC in the case against Ms. Bickley, *AMC Collections and Debt Recovery v. Jenny Bickley*, Case No. GV16-602. Compl. ¶ 20.  Charles advised the court that he was co-owner of AMC. *Id.*  The General District Court ultimately dismissed the case with prejudice. *Id.*

Ms. Bickley's complaint also alleges that on February 17 and 25, 2016, after Eve formed AMC, Ms. Bickley and Eve spoke over the phone about the insurance filings for the outstanding bills. Compl. ¶ 19.

### III. JURISDICTION AND VENUE

To render a default judgment, the Court must have subject matter jurisdiction over the case and personal jurisdiction over the defaulting parties.  Venue must also be proper.  Here, the Court has subject matter jurisdiction over Ms. Bickley's FDCPA claims pursuant to 15 U.S.C. § 1692k(d), which provides that "[a]n action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in

controversy . . . within one year from the date on which the violation occurs." Because the alleged FDCPA violations began in May 2015, less than one year before Ms. Bickley filed suit in March 2016, this Court has subject matter jurisdiction over this case. This Court has personal jurisdiction over the defendants pursuant to Federal Rule of Civil Procedure 4(k)(1)(A) and Va. Code § 8.01-328.1(A)(1). Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2), as defendants reside in the Norfolk Division of the Eastern District of Virginia and "a substantial part of the events or omissions giving rise to the claim occurred" in this judicial district.

## IV. LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure governs entries of default and default judgments. Pursuant to Rule 55(a), the Clerk must enter default against a party that "has failed to plead or otherwise defend" against an action. After the Clerk has entered default, a plaintiff may seek a default judgment against a defendant pursuant to Rule 55(b). A court must "exercise sound judicial discretion" when considering whether to enter default judgment, "and the moving party is not entitled to default judgment as a matter of right." *EMI Apr. Music, Inc. v. White*, 618 F. Supp. 2d 497, 505 (E.D. Va. 2009) (citing *Sentry Select Ins. Co. v. LBL Skysystems (U.S.A.) Inc.*, 486 F. Supp. 496, 502 (E.D. Pa. 2007)). The United States Court of Appeals for the Fourth Circuit has expressed "a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010). Default judgment may be appropriate, however, "when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

Although a defaulting party admits the factual allegations in the complaint, a court must evaluate the sufficiency of the allegations to determine if the complaint states a cause of action.

*See GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."). *See also Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) ("The court must . . . determine whether the well-pleaded allegations in [the] complaint support the relief sought in th[e] action."); *Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 506 (4th Cir. 1998) (holding that the district court erred in granting default judgment to plaintiff where plaintiff failed to state a valid claim).

## V.  ANALYSIS OF PLAINTIFF'S CLAIMS

To prevail on a claim under the FDCPA, a plaintiff must demonstrate that "(1) the plaintiff is a 'consumer' within the meaning of the statute; (2) the defendant collecting the debt is a 'debt collector' within the meaning of the statute, [and]; (3) the defendant has violated by act or omission a provision of the FDCPA." *Creighton v. Emporia Credit Serv., Inc.*, 981 F. Supp. 411, 414 (E.D. Va. 1997). The Court accepts the well-pleaded allegations in the complaint regarding liability as true and finds that the plaintiff sufficiently alleges the elements necessary to assert an FDCPA claim against the defendants. With respect to the first element, the FDCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). The FDCPA further defines "debt" as an obligation to pay money arising out of a transaction which is "primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). The complaint shows that Ms. Bickley is a natural person who allegedly incurred a debt for medical services. Ms. Bickley, therefore, is a "consumer" within the meaning of the statute. Second, the statute defines "debt collector," in pertinent part, as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of

which is the collection of any debts." 15 U.S.C. § 1692a(6). Eve and Charles, as owner and employee, respectively, of AMC Collections and Debt Recovery, a debt collection business, communicated with Ms. Bickley via telephone and mail in an attempt to collect a debt allegedly owed. The defendants, therefore, are "debt collectors" under the FDCPA. Third, the complaint alleges that the defendants' acts or omissions resulted in numerous violations of the FDCPA. For the reasons discussed below, the Court finds that the defendants' acts and omissions violated the FDCPA.

### A. Sufficiency of Allegations in Count I

Count I alleges that the defendants violated 15 U.S.C. § 1692e, which generally prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." The Fourth Circuit has established that "[w]hether a communication is false, misleading, or deceptive in violation of section 1692e is determined from the vantage of the 'least sophisticated consumer.'" *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 394 (4th Cir. 2014) (citing *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 136 (4th Cir. 1996)). That is, to determine whether a debt collector has violated the FDCPA, the Court considers "how the least sophisticated consumer would interpret the notice from the debt collector." *Dikun v. Streich*, 369 F. Supp. 2d 781, 785 (E.D. Va. 2005) (citing *Talbott v. GC Servs. Ltd. P'ship*, 53 F. Supp. 2d 846 (W.D. Va. 1999)).

To support the claim that Charles violated section 1692e, the complaint incorporates all of the defendants' conduct alleged in the complaint, but also specifically alleges that Charles falsely represented himself as the owner of "Corporate," a debt collection business different than AMC, when, in fact, he was an employee of AMC. Compl. ¶¶ 18, 21, 24. Taking the allegations of the complaint as true, this representation was false and misleading, and could have

created confusion about who was seeking, or who was entitled to seek, collection of the debt. *See Vitullo v. Mancini*, 684 F. Supp. 2d 747, 757–58 (E.D. Va. 2010) ("[T]he Fourth Circuit has held that 'the test is the capacity of the statement to mislead; evidence of actual deception is unnecessary.'" (quoting *Nat'l Fin. Servs., Inc.*, 98 F.3d at 139)). In addition, the representation could have affected how Ms. Bickley chose to respond to AMC or "Corporate," the newly-revealed and largely unexplained entity. *See Conteh v. Shamrock Cmty. Ass'n, Inc.*, 648 F. App'x 377, 379 (4th Cir. May 19, 2016) (per curiam) (noting that "[a] misstatement that 'would have been *important* to the consumer *in deciding how to respond* to efforts to collect the debt'" will sustain a claim under section 1692e (quoting *Powell v. Palisades Acquisition XVI, LLC*, 782 F.3d 119, 127 (4th Cir. 2014))). Accordingly, Count I sufficiently states a claim against Charles for violation of 15 U.S.C. § 1692e.

Count I also states a claim against Eve for a violation of 15 U.S.C. § 1692e. A principal may be held vicariously liable for the FDCPA violations of an agent, if the principal "exercise[d] control over the conduct and activities of the agent." *Nash v. Green Tree Servicing, LLC*, 943 F. Supp. 2d 640, 654 (E.D. Va. 2013) (citing *Clark. v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162, 1173 (9th Cir. 2006)). With respect to Eve's control over Charles, the complaint alleges the following: Eve, the owner and sole proprietor of AMC, employed Charles, Compl. ¶¶ 3, 5; Charles contacted Ms. Bickley the day after Eve began conducting business as AMC, Compl. ¶¶ 9–10; Eve and Charles communicated with each other regarding Ms. Bickley's debt, Compl. ¶ 16; and, according to Charles, Eve "instructed him to turn [Ms. Bickley's] account over to 'Corporate,'" Compl. ¶ 18. These allegations indicate that Eve exercised control over Charles, such that Eve is vicariously liable for the section 1692e claim against Charles.

Count I does not appear to state any additional claim against Eve, however. Although the Court must accept the factual allegations in the complaint as true and "construe them in the light most favorable to the plaintiff," *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 189 (4th Cir. 2010), the complaint must assert facts sufficient to "permit the court to infer more than the mere possibility of misconduct" entitling the plaintiff to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Count I asserts that Eve violated section 1692e by "represent[ing] herself in the capacity of Office Manager of Specialists for Women when in fact [she] was acting as a debt collector for AMC." Compl. ¶ 23.   The facts alleged, however, only indicate that on February 17 and 25, 2016, while Eve was "at her office with Specialists for Women," Eve and Ms. Bickley spoke over the phone about "insurance filing for the outstanding bills."   Compl. ¶ 19.   These allegations do not support the claim that Eve made "false and misleading representations in connection with the collection of the debt." Compl. ¶ 22. Instead, the allegations suggest that Eve and Ms. Bickley discussed insurance and billing matters within the context of a provider-patient relationship. Because the complaint does not plead facts sufficient for the Court to infer "more than the mere possibility of misconduct," *see Iqbal*, 556 U.S. at 679, count I does not establish that Eve's actions on February 17 and 25, 2016 violated 15 U.S.C. § 1692e.

### B. Sufficiency of Allegations in Count II

Count II alleges that the defendants violated 15 U.S.C. § 1692e(2)(A), which prohibits debt collectors from, among other things, falsely representing the legal status of a debt.  Courts have regularly interpreted this provision, in conjunction with section 1692e, as prohibiting a debt collector from initiating legal action on a time-barred debt. *See Dubois v. Atlas Acquisitions LLC (In re Dubois)*, No. 15-1945, 2016 WL 4474156, at *6–8 (4th Cir. Aug. 25, 2016) (noting

that "the FDCPA has been interpreted to prohibit filing a lawsuit on a time-barred debt," but declining to impose such a rule for the filing of proofs of claim in bankruptcy cases); *Huertas v. Galaxy Asset Mgmt*, 641 F.3d 28, 32–33 (3d Cir. 2011) (explaining that "the majority of courts have held that . . . the FDCPA permits a debt collector to seek voluntary repayment of time-barred debt so long as the debt collector does not initiate or threaten legal action in connection with its debt collection efforts") (collecting cases); *Puffinberger v. Commercion, LLC*, Civ. Action No. SAG-13-1237, 2014 WL 120596, at *4–5 (D. Md. Jan. 10, 2014) (acknowledging that the FDCPA prohibits a debt collector from suing on a time-barred debt, but finding summary judgment unwarranted).

In Virginia, the statute of limitations for the collection of a consumer debt is four years. Va. Code Ann. § 8.2-725(1); Compl. ¶ 28. Ms. Bickley's alleged debt was incurred no later than August 22, 2011. *Id.* Therefore, legal action to collect the debt was time barred after August 2015. *See id.* The defendants did not file suit, however, until January 28, 2016, five months after the statute of limitations had expired. Compl. ¶ 29. By filing a legal action to collect a time-barred debt from Ms. Bickley, the defendants falsely represented the legal status of a debt in violation of 15 U.S.C. § 1692e(2)(A). *See Dubois*, 2016 WL 4474156, at *6–8. Accordingly, count II states a claim against the defendants.

### C. Sufficiency of Allegations in Count III

Count III alleges that the defendants violated 15 U.S.C. § 1692e(10), which prohibits debt collectors from using false representations or deceptive means to collect or attempt to collect a debt. The complaint predicates this claim for relief upon the same factual bases alleged in counts I and II. For the reasons noted above, the facts alleged in count I with respect to Eve's conduct in February 2016, fail to support Ms. Bickley's claim for relief in count III. Considering

the same principles of agency law described in the discussion of count I, the remaining allegations in count III related to Charles's false representations regarding his ownership of a different debt collecting entity and regarding Eve and Charles's filing of a legal action to collect a time-barred debt, state a claim for relief.

### D. Sufficiency of Allegations in Count IV

Count IV alleges that the defendants violated 15 U.S.C. § 1692e(11), which requires debt collectors to make certain disclosures during communications with a consumer. In particular, this provision requires a debt collector to disclose, in an initial oral communication with a consumer, that "the debt collector is attempting to collect a debt *and* that any information obtained will be used for that purpose."[2]  15 U.S.C. § 1692e(11) (emphasis added).

On May 6, 2015, Eve filed a Certificate of Assumed or Fictitious Name in order to conduct business as AMC Collections and Debt Recovery. Compl. ¶ 9. Charles called Ms. Bickley the next day. Compl. ¶ 10. This conversation, on May 7, 2015, constitutes the "initial oral communication" between Charles and Ms. Bickley for purposes of section 1692e(11) of the FDCPA.   Charles called "as a representative and employee of AMC," Compl. ¶ 11, and "demand[ed] payment for unspecified medical bills and collection fees totaling $5,800.00." Compl. ¶ 10. These statements appear to satisfy the requirement that the debt collector disclose that he "is attempting to collect a debt," *see* 15 U.S.C. § 1692e(11), since the "least sophisticated consumer" would understand as much. *See Nat'l Fin. Servs., Inc.*, 98 F.3d at 135–39 (applying the "least sophisticated consumer" standard to the evaluation of section 1692e claims); *Forman v. Acad. Collection Serv., Inc.*, 388 F. Supp. 2d 199, 205 (S.D.N.Y. 2005) (finding that although a debt collector's disclosure "does not track the language of [subsection 1692e(11)] verbatim, it

---

[2] The provision also requires a debt collector to disclose, in subsequent communications with the consumer, that the communication is from a debt collector. 15 U.S.C. § 1692e(11).

is not required to as long as the warning comes across"); *cf. Danehy v. Jaffe & Asher, LLP*, No. 5:14-CV-60-FL, 2015 WL 1249879, at *8 (E.D.N.C. Mar. 17, 2015) ("Although [the defendant] did not state explicitly that he was a 'debt collector,' the language used was sufficient [under section 1692e(11)] to 'disclose his status' as such to plaintiff."). During the call, however, Charles failed to disclose that "any information obtained would be used for collection purposes." Compl. ¶ 37. As a result, he failed to fully satisfy the disclosure requirements. *See* 15 U.S.C. § 1692e(11); *Davis v. R & R Prof'l Recovery, Inc.*, Civ. Action No. RDB-07-2772, 2009 WL 400627, at *3 (D. Md. Feb. 17, 2009) (noting the multiple disclosures required as part of an initial communication under section 1692e(11)). Accordingly, the allegations sufficiently state a claim against Charles for a violation of 15 U.S.C. § 1692e(11).[3] Considering the same principles of agency law described in the discussion of count I, Eve is vicariously liable for the section 1692e(11) claim against Charles. *See Nash*, 943 F. Supp. 2d at 654.

### E. Sufficiency of Allegations in Count VI

Count VI alleges that the defendants violated 15 U.S.C. § 1692f(8), which prohibits a debt collector from using its business name on any envelope when communicating with a consumer by mail, if the name indicates that it is in the debt collection business. "The purpose of this specific provision is apparently to prevent embarrassment resulting from a conspicuous name on the envelope, indicating that the contents pertain to debt collection." *Rutyna v. Collection Accounts Terminal, Inc.*, 478 F. Supp. 980, 982 (N.D. Ill. 1979).

The defendants communicated with Ms. Bickley by mail on January 29, 2016, when they sent her the Warrant in Debt. Compl. ¶ 17. The envelope containing the Warrant in Debt stated

---

[3] Because the Court finds that Charles's call to Ms. Bickley on May 7, 2015 provides a basis for liability under section 1692e(11), the Court need not consider the other section 1692e(11) claims alleged in count IV against Charles related to subsequent communications occurring on January 14, 20, and 29, 2016.

the full name of AMC – AMC Collections and Debt Recovery – as part of the return address. *Id.*; Ex. 7. The name includes the phrase "Collections and Debt Recovery," which indicates that the defendants are in the debt collection business. Based upon these allegations, the Court finds that count VI sufficiently states a claim for a violation of 15 U.S.C. § 1692f(8). *See Keasey v. Judgment Enf't Law Firm, PLLC*, No. 1:13-cv-420, 2014 WL 1744268, at *3–4 (W.D. Mich. Apr. 30, 2014) (holding that the use of the name "Judgment Enforcement Law Firm" on an envelope of a collection letter violated section 1692f(8) because "[a] person viewing the mail, including the least sophisticated consumer, could reasonably conclude that a law firm dedicated to enforcing judgments is in the debt collection business"); *Rutyna*, 478 F. Supp. at 982 (holding that the use of the name "Collections Accounts Terminal, Inc." on collection letter violated section 1692f(8)).

## F. Sufficiency of Allegations in Count VII

Count VII alleges that the defendants violated 15 U.S.C. § 1692g, which requires a debt collector to send a consumer written notice of a debt within five days after the debt collector's initial communication with the consumer. The written notice must contain certain information, including the amount of the debt and statements about the consumer's rights and responsibilities. 15 U.S.C. § 1692g.

Charles initially communicated with Ms. Bickley on May 7, 2015, one day after Eve filed her assumed name certificate with Suffolk Circuit Court indicating she was conducting business as AMC. Compl. ¶¶ 9–10. Charles called as an employee and representative of AMC. Compl. ¶ 11. After this initial communication, neither Charles nor Eve provided Ms. Bickley with the

statutorily-required written notice of the debt.[4] Compl. ¶ 12. Additionally, Ms. Bickley testified at the evidentiary hearing that she never received any written communication from Charles, Eve, or AMC, other than the Warrant in Debt. Accordingly, Ms. Bickley sufficiently states a claim against defendants for violation of 15 U.S.C. § 1692g. *See, e.g., Anderson v. Didonato*, No. 1:12cv643, 2012 WL 6553675, at *3 (E.D. Va. Nov. 19, 2012) (Report and Recommendation) *adopted by* No. 1:12cv643, 2012 WL 6561259 (E.D. Va. Dec. 14, 2012) (finding a violation of section 1692g where a debt collector failed to provide requisite written notice to consumer); *Richardson v. William Sneider & Associates, LLC*, No. 4:12cv25, 2012 WL 3525625, at *6 (E.D. Va. July 24, 2012) (Report and Recommendation) *adopted by* No. 4:12cv25, 2012 WL 3525621 (E.D. Va. Aug. 14, 2012) (same).

## VI. DAMAGES

Having found that the complaint states valid claims against the defendants, the Court must next determine the appropriate relief. "Although well-pleaded factual allegations are accepted as true for default judgment purposes, a party who defaults does not admit the allegations in the claim as to the amount of damages." *S. Bank & Trust Co. v. Pride Grp., LLC*, No. 2:14cv255, 2015 WL 410726, at *4 (E.D. Va. Jan. 28, 2015); *see also Lawbaugh*, 359 F. Supp. 2d at 422 ("Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not.") Accordingly, a court must "independently calculate the appropriate amount of damages." *Pride Grp., LLC*, 2015 WL 410726, at *4 (citing *Ryan*, 253 F.3d at 780–81). To determine the appropriate amount of damages, a court may conduct an evidentiary hearing. Fed. R. Civ. P. 55(b)(2).

---

[4] Because the Court finds that the initial communication on May 7, 2015 and subsequent failure to send written notice provide a basis for liability under section 1692g, the Court need not consider later communications between Ms. Bickley and the defendants as potential bases for liability under this provision.

The FDCPA allows an individual plaintiff to recover actual damages, statutory damages up to $1,000.00, and attorney's fees and costs. 15 U.S.C. § 1629k(a). According to the complaint and testimony at the hearing, Ms. Bickley seeks $15,000.00 in actual damages for emotional distress; $1,500.00 in out-of-pocket expenses for the defense of the Warrant in Debt; $1,000.00 in statutory damages; $12,281.25 in attorney's fees; $424.00 in costs; and pre- and post-judgment interest.

### A. Actual Damages

A consumer may recover "any actual damage sustained by such person" as a result of a debt collector's failure to comply with the FDCPA. 15 U.S.C. § 1629k(a)(1). Although the actual damages provision encompasses damages for emotional distress, *Dryden v. Accredited Collection Agency, Inc.*, No. 3:14cv255, 2015 WL 3646649, at *5 (E.D. Va. June 10, 2015) (quoting *Carter v. Countrywide Home Loans, Inc.*, No. 3:07cv651, 2009 WL 1010851, at *4 (E.D. Va. Apr. 14, 2009)), "[c]ourts are 'reluctant to award damages for emotional distress from violations of the FDCPA absent an aggrieved plaintiff receiving mental health treatment or evidence that emotional distress concretely affected a plaintiff's personal or professional life.'" *Valdez v. Arm Wyn, LLC*, No. 7:14cv00263, 2015 WL 3661102, at *3 (W.D. Va. June 12, 2015) (quoting *Leto v. World Recovery Servs., LLC*, No. 3:14cv00489, 2015 WL 1897060, at *4–5 (W.D.N.C. April 27, 2015)). *See, e.g., Dryden*, 2015 WL 3646649, at *5 (declining to award actual damages for emotional distress when plaintiff presented "mere conclusory allegations" and no "competent proof" to support her request for $3,000.00); *Valdez*, 2015 WL 3661102, at *3 (awarding $1,000.00 of the $5,000.00 requested for actual damages when plaintiff failed to provide "a declaration or other evidence detailing her specific emotional injuries or how those injuries have hampered her life"); *Leto*, 2015 WL 1897060, at *3 (awarding $1,000.00 in actual

damages when plaintiff did not receive mental health treatment and finding that "five months of modest anxiety and stress does not, without more, support an award of $10,000.00"). *But see Lundie v. Smith & Cohen, LLC*, No. 2:15cv291, 2016 WL 717113, at *5 (E.D. Va. Jan. 26, 2016) (Report and Recommendation) *adopted by* No. 2:15cv291, 2016 WL 715736 (E.D. Va. Feb. 18, 2016) (recommending that plaintiff receive the requested $2,000.00 in actual damages based on plaintiff's emotional distress, "including her diagnosed medical condition").

The complaint alleges that Ms. Bickley suffered actual damages including "loss of monies, personal humiliation, embarrassment, mental anguish and emotional distress." Compl. ¶¶ 25, 31, 35, 39, 47, 51. At the evidentiary hearing, Ms. Bickley testified, in compelling fashion, and explained how the defendants' conduct caused her great emotional distress over several years. In October 2013, when Ms. Bickley received the first bill from Specialists for Women stating that she owed $3,733.90, Eve, then officer manager, was largely unresponsive to Ms. Bickley's repeated calls. When Ms. Bickley and Eve did speak over the phone, Eve implicitly threatened Ms. Bickley. Eve said that she had "all the time in the world" to bill Ms. Bickley, that collections agencies could "hound" people for years, and that she had "no problem" taking Ms. Bickley to court. Charles further contributed to Ms. Bickley's distress. For example, Charles claimed that Ms. Bickley now owed $5,800.00; suggested that he could garnish her husband's wages; and, before filing suit against Ms. Bickley, he threatened to take her to court and ruin her credit.

Ms. Bickley testified that this matter has been a major part of her life since 2013. With a husband and four children, Ms. Bickley found the bill for $3,733.90 to be overwhelming. She reports that she has always paid her bills and never faced such a situation before. When Ms. Bickley learned of the alleged debt, she expended diligent efforts in an attempt to find a

16

resolution. For example, in addition to repeatedly calling Eve, Ms. Bickley contacted her insurance company multiple times over a period of several months to sort out the problem. Further, when Charles threatened to garnish her husband's wages, Ms. Bickley considered taking out a loan to pay off the debt. Ms. Bickley testified that, as a result of defendants' conduct, she suffered from panic attacks, was unable to sleep, cried often, and felt upset and physically sick.

Due to the emotional distress that defendants' conduct caused Ms. Bickley, the undersigned recommends an award of $2,000.00 to Ms. Bickley for emotional distress. The record does not support an award for $15,000.00 as requested, in part because there is no evidence that Ms. Bickley received mental health treatment in connection with the defendants' misconduct.

The undersigned further recommends an award of $1,500.00 to Ms. Bickley for the out-of-pocket expenses she incurred to defend against the Warrant in Debt. *See* 15 U.S.C. § 1629k(a)(1) (permitting recovery for "any actual damage sustained" as a result of an FDCPA violation); *Carter*, 2009 WL 1010851, at *4 (noting that the FDCPA allows recovery for emotional distress as well as out-of-pocket expenses) (citing Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50109 (Dec. 13, 1988)); *McHugh v. Check Inv'rs, Inc.*, No. 5:02cv106, 2003 WL 21283288, at *5 (W.D. Va. May 21, 2003) (awarding actual damages for out-of-pocket expenditures that plaintiff incurred to pay off a debt allegedly owed). In total, the undersigned recommends an award of $3,500.00 to Ms. Bickley for actual damages.

### B. Statutory Damages

A court may award up to $1,000.00 in statutory damages for violations of the FDCPA. 15 U.S.C. § 1629k(a)(2)(A); *see also Dryden*, 2015 WL 3646649, at *6 (finding multiple FDCPA violations and awarding $1,000.00 in statutory damages); *Barnett v. Creditors Specialty Serv.,*

*Inc.*, No. 1:12cv303, 2013 WL 1629090, at *2 (W.D.N.C. Apr. 16, 2013) ("The statute provides for damages of $1,000.00 per lawsuit, not per incident.") (citations omitted); *Wright v. Finance Serv. of Norwalk, Inc.*, 22 F.3d 647, 651 (6th Cir. 1994) (holding that statutory damages under the FDCPA are limited to $1,000.00 per proceeding, not per violation). In determining the appropriate amount of statutory damages, a court must consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1629k(b)(1).

The defendants in this case persistently violated the FDCPA over a period of approximately ten months. *See* Compl. ¶¶ 9–20. Among other violations, the defendants made false or misleading representations to Ms. Bickley and failed to make required disclosures when communicating with her. Additionally, and perhaps most importantly, the defendants filed suit against Ms. Bickley in an attempt to collect a debt for which the statute of limitations had expired five months prior. Considering the defendants' noncompliance with the FDCPA and the section 1629k(b)(1) factors, the undersigned recommends an award of $1,000.00 in statutory damages to Ms. Bickley.

## C. Attorney's Fees and Costs

The FDCPA also provides that a consumer may recover "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). When a plaintiff in an FDCPA action establishes liability, an award of attorney's fees is mandatory except in "the most unusual circumstances." *Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 628 (4th Cir. 1995) (citing *Graziano v. Harrison*, 950 F.2d 107, 113–14 (3d Cir.1991)). A court has discretion to determine a reasonable award amount, *Carroll*, 53 F.3d at 628–29, but the analysis must begin with calculation of the lodestar figure. *Grissom v. Mills Corp.*, 549 F.3d 313, 320

(4th Cir. 2008).  The lodestar figure is "the amount determined by multiplying 'the number of hours reasonably expended on the litigation' by 'a reasonable hourly rate.'"  *Carroll*, 53 F.3d at 628 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  To determine a "reasonable" number of hours and rate, the Court is guided by the following factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243–44 (4th Cir. 2009) (quoting *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)).  In addition to these factors, "the court must exclude any hours that are 'excessive, redundant, or otherwise unnecessary,' as such hours are not reasonably expended on the litigation."  *Project Vote/Voting for Am., Inc. v. Long*, 887 F. Supp. 2d 704, 709 (E.D. Va. 2012) (quoting *Hensley*, 461 U.S. at 434).

To demonstrate the reasonableness of the time expended, the party requesting attorney's fees must submit proper documentation of the number of hours the attorney(s) spent on the case. *Dryden*, 2015 WL 3646649, at *7 (citing *E.E.O.C. v. NutriSys., Inc.*, 685 F. Supp. 568, 573 (E.D. Va. 1988)).  To demonstrate the reasonableness of the hourly rate, the party requesting attorney's fees must submit, "[i]n addition to the attorney's own affidavits, . . . satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award."  *Grissom*, 549 F.3d at 321 (quoting *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990)).  Satisfactory evidence includes "affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the

relevant community." *Robinson*, 560 F.3d at 245.

Ms. Bickley requests $12,281.25 in attorney's fees, $400.00 for the filing fee paid on her behalf, and $24.00 for the cost of serving Eve and Charles with the complaint. Abbott Aff., ECF No. 15-9; Filing Fee Receipt, ECF No. 15-10; Service Fee Invoice, ECF No. 15-8. At the evidentiary hearing on August 25, 2016, Robin A. Abbott, Esq., counsel for Ms. Bickley, submitted an affidavit detailing the hours worked on this case. Abbott Aff., ECF No. 15-9. She reports working 32.75 total hours on this case, including time spent researching, preparing and filing documents, and consulting with her client. Abbott Aff. ¶¶ 6–7. Ms. Abbott asserts that an appropriate rate for her representation in this case is $375.00 per hour, which is also her present billing rate. Abbott Aff. ¶¶ 3, 8. To support this claim, Ms. Abbott submitted the declaration of Leonard A. Bennett, an attorney based in Newport News, Virginia, who has litigated approximately 400 federal cases, most of which concerned federal consumer protection laws. Bennett Decl., ECF No. 16. Mr. Bennett states that the Eastern District of Virginia (Richmond Division) has recently approved his hourly rate of $675.00 and that he currently charges "most clients" that rate "for representation in litigation matters." Bennett Decl. ¶ 6. Mr. Bennett asserts that he knows Ms. Abbott "very well" and that, prior to establishing her solo practice, "she worked on cases in all areas of consumer litigation" during her ten years with Consumer Litigation Associates, P.C., Mr. Bennett's firm. Bennett Decl. ¶ 9. Mr. Bennett states that Ms. Abbott has "excellent litigation skills and knowledge in the field of consumer protection casework." Bennett Decl. ¶ 10. Mr. Bennett declares that "Ms. Abbott's established rate of $375.00 per hour is more than reasonable," Bennett Decl. ¶ 10, and that her fee petition is appropriate. Bennett Decl. ¶ 11.

Considering Ms. Abbott's affidavit, Mr. Bennett's declaration, and attorney's fees awards

for other FDCPA default judgment cases in this district, the Court finds that the time Ms. Abbott

expended on this case, 32.75 hours, is reasonable. *See, e.g., Richardson*, 2012 WL 3525625, at

*12 (recommending award for 31.50 hours worked) (adopted by No. 4:12cv25, 2012 WL

3525621), *Didonato*, 2012 WL 6553675 (recommending award for 50.30 hours worked as

requested in plaintiff's counsel's declaration in support of attorney's fees) (adopted by No.

1:12cv643, 2012 WL 6561259).  With respect to the hourly rate, Ms. Abbott represents that an

award for $375.00 per hour is appropriate.  The Court notes, however, that Ms. Abbott dedicated

time to certain tasks, such as client consultation and telephone communications, that a paralegal

or lesser-skilled attorney could have performed for a lower hourly rate. *See* Abbott Aff. ¶ 6.

Accordingly, and considering other attorney's fees awards for FDCPA default judgment cases in

this district, the Court finds that an average hourly rate of $300.00 is reasonable. *See, e.g.,*

*Lundie*, 2016 WL 717113, at *8 (recommending award for $400.00 hourly rate for partner

attorneys, $250.00 hourly rate for junior associates) (adopted by No. 2:15cv291, 2016 WL

717113); *Dryden*, 2015 WL 3646649, at *7 (approving $300.00 hourly rate for attorney, $50.00

hourly rate for paralegal); *Didonato*, 2012 WL 6553675 (recommending award for $285.00

hourly rate for attorneys, $140.00 hourly rate for paralegal) (adopted by No. 1:12cv643, 2012

WL 6553675); *Richardson*, 2012 WL 3525625, at *12 (recommending award for $275.00 hourly

rate for attorney) (adopted by No. 4:12cv25, 2012 WL 3525621); *Coles*, 2010 WL 5300892

(approving $350.00 hourly rate for attorney, $105.00 hourly rate for paralegal).  In this case, the

reasonable number of hours expended, 32.75, multiplied by the reasonable hourly rate, $300.00,

results in a lodestar figure of $9,825.00.

Based on the *Robinson* factors, the undersigned recommends an award of attorney's fees

in the lodestar amount.  The Fourth Circuit has directed that "the most critical factor in

determining the reasonableness of a fee award is the degree of success obtained," *Doe v. Chao*, 435 F.3d 492, 506 (4th Cir. 2006), and Ms. Bickley obtained significant success here. The complaint sufficiently alleged multiple violations of the FDCPA. Ms. Bickley also demonstrated that actual and statutory damages are warranted. In addition, the Court recognizes that the lengthy relationship between Ms. Bickley and the defendants made this a case of some complexity that required skill to litigate. Given these considerations, an award of $9,825.00 is appropriate. The Court also notes that this amount is reasonable in light of other awards for FDCPA default judgment cases in this district. *See Didonato*, 2012 WL 6553675, at *6 (recommending award of $11,534.35 for attorney's fees and costs) (adopted by No. 1:12cv643, 2012 WL 6561259); *Richardson*, 2012 WL 3525625, at *12 (recommending award of $8,387.50 for attorney's fees) (adopted by No. 4:12cv25, 2012 WL 3525621). The undersigned recommends that costs be awarded in the requested amount of $424.00.

### D. Interest

The complaint requests that the Court award pre- and post-judgment interest. Fourth Circuit precedent indicates that, "as a general matter, prejudgment interest may be awarded at the district court's discretion unless the applicable statute provides otherwise." *Georgia-Pac. Consumer Prod. LP v. von Drehle Corp.*, 781 F.3d 710, 722 (4th Cir. 2015), *as amended* (Apr. 15, 2015) (citing *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1030 (4th Cir. 1993) (en banc)). Moreover, "[o]rdinarily, when a statute is silent, the issue of prejudgment interest is committed to the sound discretion of the trial court and its refusal to make such an award will be upset only upon a showing of abuse of that discretion." *Coliseum Cartage Co. v. Rubbermaid Statesville, Inc.*, 975 F.2d 1022, 1026 (4th Cir. 1992). Because the FDCPA does not address the award of pre-judgment interest, *see* 15 U.S.C. § 1692k, and finding no case law from within the

22

Fourth Circuit addressing the award of pre-judgment interest in FDCPA cases, the Court retains discretion in determining whether to issue such an award. *See, e.g., Georgia-Pac. Consumer Prod. LP*, 781 F.3d at 722; *Coliseum Cartage Co.*, 975 F.2d at 1026; *Quesinberry*, 987 F.2d at 1030 ("ERISA does not specifically provide for pre-judgment interest, and absent a statutory mandate the award of pre-judgment interest is discretionary with the trial court.") (citing *Whitfield v. Lindemann*, 853 F.2d 1298, 1306 (5th Cir. 1988)); *Sky Cable, LLC v. Coley*, No. 5:11cv48, 2014 WL 279592, at *3 (W.D. Va. Jan. 23, 2014) ("While the Communications Act is silent on the issue of an award of prejudgment interest, it is clear that a federal court retains the discretion to award prejudgment interest.") (citations omitted).

The undersigned does not recommend an award for pre-judgment interest in this case, in part, because Ms. Bickley has not offered any explanation regarding why a pre-judgment interest award may be appropriate. *See Gwinn v. Safeguard Recovery LLC*, Civ. Action No. 14-1923, 2015 WL 3715248, at *2 (D. Ariz. June 15, 2015) ("Plaintiff has not explained why he is entitled to prejudgment interest. Because Defendants' violation of the FDCPA was relatively minor and Plaintiff will receive an award of statutory damages, prejudgment interest is unnecessary here."); *Medina v. Brithe & Associates, PLC*, Civ. Action No. 13-573, 2013 WL 6179731, at *2 (D. Ariz. Nov. 26, 2013) ("Because the FDCPA does not provide for prejudgment interest, and Plaintiff does not provide any arguments in support of her request for prejudgment interest, the Court recommends that Plaintiff's request for prejudgment interest be denied.") (citations omitted). The Court notes that although the complaint seeks pre-judgment interest, Ms. Bickley's motion for default judgment does not address prejudgment interest, *see* ECF No. 8, and counsel did not raise the issue at the evidentiary hearing. Ms. Bickley has provided no guidance, in the form of a brief or otherwise, to help the Court determine how such an award may be calculated. Given

these considerations, the undersigned declines to recommend that prejudgment interest be awarded. *See Schwarm v. Craighead*, Civ. Action No. 05-01304, 2008 WL 3286797, at *5 (E.D. Cal. Aug. 6, 2008) (denying plaintiffs' request for prejudgment interest where "the evidence presently before the court does not establish that plaintiffs are entitled to prejudgment interest as a matter of law").

The undersigned recommends that post-judgment interest be awarded pursuant to 28 U.S.C. § 1961. *See, e.g., Richardson*, 2012 WL 3525625, at *13 (recommending award for post-judgment interest in an FDCPA case) (adopted by No. 4:12cv25, 2012 WL 3525621).

## VII. RECOMMENDATION

For the reasons stated above, it is RECOMMENDED that plaintiff's motion for default judgment be GRANTED and that judgment be ENTERED against the defendants, jointly and severally, in the amount of:

> (1) $3,500.00 in actual damages ($2,000.00 for emotional distress and $1,500.00 for out-of-pocket expenses);
>
> (2) $1,000.00 in statutory damages; and
>
> (3) $9,825.00 in attorney's fees and $424.00 in costs.

The Court further RECOMMENDS that post-judgment interest be awarded and that plaintiff's request for pre-judgment interest be DENIED.

## VIII. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that, pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen days from the date of mailing of

this report to the objecting party, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three days permitted by Rule 6(d) of said rules. A party may respond to any other party's objections within fourteen days after being served with a copy thereof. *See* Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three days permitted by Rule 6(d) of said rules).

2. A district judge shall make a *de novo* determination of those portions of this Report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

Robert J. Krask
**United States Magistrate Judge**

Robert J. Krask
United States Magistrate Judge

Norfolk, Virginia
October 7, 2016